UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CRAIG BROWN and
TERRI BROWN,

   Plaintiffs,         Civil Action No.
                 06-CV-199
vs.
                 HON. BERNARD A. FRIEDMAN
STATE FARM FIRE AND
CASUALTY COMPANY, et al.,

   Defendants.
_____/

**OPINION AND ORDER GRANTING SIBLEY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT and DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the court on (1) the motion [docket entry 180] of defendants Sibley Group Limited, Ltd., William V. Gwin, P.E., and Albert F. Pruett (collectively, "the Sibley defendants"); and (2) plaintiffs' motion for summary judgment [docket entry 183]. As the court does not believe oral argument is necessary, it shall decide these motions on the briefs. For the following reasons, the court shall grant defendants' motion and deny plaintiffs' motion.

This case arises from the destruction of plaintiffs' house, which was located near the Gulf Coast in Long Beach, Mississippi, by Hurricane Katrina on August 29, 2005. Plaintiffs' house was reduced to a "slab." Plaintiffs filed a claim with State Farm Fire and Casualty Insurance Company ("State Farm Fire") under their homeowners' policy. State Farm Fire denied the claim on the grounds, essentially, that the house was destroyed by water, not wind, and plaintiffs' policy had no flood coverage. Plaintiffs brought suit against State Farm Fire and, by subsequent amendment, State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and the Sibley defendants. Plaintiffs have settled with State Farm Fire and State Farm Mutual (collectively,

"State Farm"). Only plaintiffs' claims against the Sibley defendants remain.

The Sibley Group is an engineering firm which State Farm Fire retained in September 2005 to determine whether plaintiffs' house was destroyed by wind or by water. Defendant Pruett, who worked for the Sibley Group as a consultant, inspected plaintiffs' property and prepared a Field Information Report. Defendant Gwin, a Sibley engineer who oversaw the preparation of Katrina-related reports requested by State Farm, prepared a Damage Causation Assessment Report, which incorporated Pruett's report as Exhibit A and a Weather Information Report as Exhibit B. These reports were submitted to State Farm Fire in December 2005. In January 2006, State Farm Fire denied plaintiffs' claim based, at least in part, on defendant Gwin's opinion that "the structure was destroyed by the storm surge."

Plaintiffs' claims against the Sibley defendants are presented in the second amended complaint [docket entry 53]. The allegations against these defendants are found in paragraphs 67 to 76 and assert in relevant part as follows:

> NEGLIGENCE; GROSS NEGLIGENCE; INTERFERENCE WITH CONTRACTUAL RIGHTS; CONSPIRACY TO COMMIT FRAUD: SIBLEY GROUP, WILLIAM V. GWIN AND ALBERT F. PRUETT
>
> 69. . . . [The Sibley defendants] . . . recognized the significance of their opinion. If Sibley Group found, in their professional engineering opinion, Plaintiffs' home and contents were destroyed by wind, Plaintiffs would be covered under their State Farm Fire policy of insurance . . . . On the contrary, [the Sibley defendants] were aware that if they found Plaintiffs' home and contents were destroyed by flood, the Plaintiffs would not be covered . . . . Thus, [the Sibley defendants] had full knowledge of the contract of insurance between State Farm Fire and the Plaintiffs, and that any actions taken by [them] would have an impact on said contract and the protection of Plaintiffs' contractual and/or legal rights and insurance proceeds.
>
> \* \* \*
>
> 71. . . . [The Sibley defendants] knew or should have known that

2

Albert F. Pruett was, for all practical purposes, making up and/or guessing at all necessary and pertinent information pertaining to the Plaintiffs property . . . [The Sibley defendants] knew that Mr. Gwin was changing and/or altering the on-site findings of Albert Pruett. Furthermore, [the Sibley defendants] conspired . . . in changing and/or altering engineering reports and/or Damage Causation Assessment Reports in an effort to conform to State Farm Fire's pre-determined outcome; that flood caused the damage to the Plaintiff's property . . . .

72. [The Sibley defendants] had a duty to exercise reasonable care in rendering its engineering services . . . on the Plaintiffs' property. Upon information and belief, [the Sibley defendants] recognized the significance of their professional engineering opinion and, because of their negligence and/or gross negligence, the resulting harm that it would cause the Plaintiffs to suffer. [The Sibley defendants] negligently and/or grossly negligently failed to exercise reasonable care in the performance of their contracted duties and assisted and/or increased the harm to the Plaintiffs. . . .

73. . . . [The Sibley defendants] conspired with State Farm Fire, in a common effort, to send and/or allow Mr. Pruett to inspect the property of the Plaintiffs' . . . and, change and/or alter Mr. Pruett's reports in an effort to fraudulently deny the hurricane claims of the Plaintiffs' and similarly situated insureds. Said civil conspiracy was done for the financial benefit of State Farm Fire, who, in turn, would continue to hire Sibley Group, for substantial consideration, for such engineering consultations. Sibley Group and knew [sic] its fraudulent actions in changing and/or altering engineering reports in an effort to find the damage from Hurricane Katrina was caused by flood, would affect the contractual and/or legal rights of the Plaintiffs and thus cause damage and severe emotional distress to the Plaintiffs and similarly situated insureds.

\* \* \*

76. The acts of [the Sibley defendants] . . . make [them] liable, jointly and severally, to the Plaintiffs for negligent, grossly negligent, intentional, malicious, and/or reckless interference with the rights of the Plaintiffs and Conspiracy to Commit Fraud. Additionally, Sibley Group's conduct is so outrageous as to shock the conscious [sic] of a reasonable person, making them liable to these Plaintiffs for the Tort of Outrage and punitive damages.

3

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). The court must view the evidence in the light most favorable to the opposing party and grant the motion only if the evidence is so one-sided that a reasonable fact-finder could not find for the non-moving party. *See Anderson*, 477 U.S. at 248-50; *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005); *Callender v. Ergon, Inc.*, 928 F. Supp. 665 (S.D. Miss. 1996).

The court shall grant summary judgment for defendants on plaintiffs' civil conspiracy claim because plaintiffs have failed to produce any evidence from which a jury reasonably could conclude that a conspiracy existed between the Sibley defendants and State Farm Fire or State Farm Mutual. This claim is premised on the theory that State Farm Fire directed the Sibley defendants to prepare a report which, regardless of the true facts, would express the opinion that plaintiffs' house was destroyed by storm surge, not wind. There is, quite simply, no evidence of any such collusion. Plaintiffs' only evidence of collusion is their Exhibit I (attached to plaintiffs' summary judgment motion), which is a copy of an email dated October 28, 2005, from Mark Wilcox, a State Farm "construction consultant," with the subject heading "Engineering reports." This email states:

> Some of you have queried us concerning the content of the report, the length and style. Attached is a document that we believe answers those questions. Please consider this format in preparing any future reports and mail them with your invoice to the requestor. If you have any questions please let me know.

The attached document is a sample report, or "suggested format," containing the section headings of "description," "weather data," and "observations/conclusions." The final paragraph of the sample report states:

> 6. In summary, the (insert policyholder's name) residence was destroyed by storm surge moving south to north. Water reached higher than the eaves/ceilings. There was a lack of wind damage to the roofing, indicating that the roofs were likely underwater [sic] when the winds were the strongest and/or the winds were not very strong at roof level. Homes to the north at higher elevations survived the storm surge and wind damage was limited primarily to roof materials.

Even assuming a jury might construe this email as evidence that State Farm sought to influence the content of engineering reports, there is no evidence that the Sibley defendants received or were aware of it, or that they acted in any manner at State Farm's behest. The email itself does not indicate to whom it was sent, and defendants Sibley Group and Gwin specifically deny that State Farm ever contacted them, in any manner, regarding the content of their report. *See* Declaration of Wynfred Sibley ¶¶ 11, 12; Declaration of William Gwin ¶ 4. Defendant Pruett, who wrote the Field Information portion of the report, was deposed by plaintiffs for several hours but was never asked about the Wilcox email. *See* transcript of Pruett Dep. (Exhibit E to plaintiffs' summary judgment motion). However, Pruett did testify that he "[n]ever talked to State Farm" and that he was never "asked or told to make changes to reports" *Id.* at 96, 135. In short, plaintiffs have produced no evidence from which a jury could find that the Sibley defendants conspired with State Farm in any fashion. Specifically, plaintiffs have produced no evidence of a meeting of the minds

whereby the Sibley defendants agreed to follow State Farm's instructions to write a report in which water, not wind, was to be the cause of the destruction of plaintiffs' house even if the facts were to the contrary. As plaintiffs have failed to produce any evidence of conspiracy or to rebut defendants' evidence that no conspiracy existed, defendants are entitled to summary judgment on this claim. *See Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004) ("It is elementary that a conspiracy requires an agreement between the co-conspirators.").

As for plaintiffs' claims of negligence and gross negligence, the court shall grant summary judgment for the Sibley defendants because plaintiffs have failed to show that these defendants owed them any duty that is cognizable under Mississippi negligence law.

> As the Mississippi Supreme Court has stated:
>
>   To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation and injury. *Meena v. Wilburn*, 603 So.2d 866, 869 (Miss. 1992). The plaintiff must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury', (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages." *Id.* at 870 n.5 (*citing and quoting Burnham v. Tabb*, 508 So.2d 1072, 1074 (Miss. 1987). Duty and breach of duty are essential to finding negligence and must be demonstrated first. *Strantz v. Pinion*, 652 So.2d 738, 742 (Miss. 1995).
>   While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty. W. Page Keeton, *Prosser and Keeton on Torts* § 37, at 236 (5th ed. 1984). This Court has held that the existence vel non of a duty of care is a question of law to be decided by the Court. *Foster v. Bass*, 575 So.2d 967, 972-73 (Miss. 1990).

*Donald v. Amoco Prod. Co.*, 735 So.2d 161, 174 (Miss. 1999). At the cited page, *Prosser and Keeton on Torts* states:

> [The existence of duty means] whether, upon the facts in evidence, such a relationship exists between the parties that the community will impose a legal obligation upon one for the benefit of the other – or,

6

>more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. . . . A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant.

*Prosser and Keeton on Torts* § 37, p. 236.

In the present case, the negligence claim fails because plaintiffs have not met their burden of proving that the Sibley defendants owed them any duty. In attempting to establish the existence of a duty, plaintiffs rely principally on a Mississippi statute, Miss. Code Ann. § 7-5-303. A statute can define a duty under negligence law, and in that event "violation of the statute[] will be generally found to constitute 'negligence per se' if (1) the plaintiff was in the class of persons the statute was designed to protect, and (2) the injury the plaintiff sustained was the kind of injury the statute was designed to prevent." *State Farm Auto Ins. Cos. v. Davis*, 887 So.2d 192, 194 (Miss. Ct. App. 2004), *citing Byrd v. McGill*, 478 So.2d 302, 304-05 (Miss. 1985).

The statute at issue, Miss. Code Ann. § 7-5-303, states:

>(1) As used in this section:
>
>(a) "An insurance plan" means a plan or program that provides health benefits whether directly through insurance or otherwise and includes a policy of life or property and casualty insurance, a contract of a service benefit organization, workers' compensation insurance or any program or plan implemented in accordance with state law or a membership agreement with a health maintenance organization or other prepaid programs.
>
>(b) "Insurance official" means:
>
>(i) An administrator, officer, trustee, fiduciary, custodian, counsel, agent or employee of any insurance plan;
>
>(ii) An officer, counsel, agency or employee of an organization, corporation, partnership, limited partnership or other entity that

provides, proposes to, or contracts to provide services through any insurance plan; or

(iii) An official, employee or agent of a state or federal agency having regulatory or administrative authority over any insurance plan.

(2) A person or entity shall not, with the intent to appropriate to himself or to another any benefit, knowingly execute, collude or conspire to execute or attempt to execute a scheme or artifice:

(a) To defraud any insurance plan in connection with the delivery of, or payment for, insurance benefits, items, services or claims; or

(b) To obtain by means of false or fraudulent pretense, representation, statement or promise money, or anything of value, in connection with the delivery of or payment for insurance claims under any plan or program or state law, items or services which are in whole or in part paid for, reimbursed, subsidized by, or are a required benefit of, an insurance plan or an insurance company or any other provider.

(3) A person or entity shall not directly or indirectly give, offer or promise anything of value to an insurance official, or offer or promise an insurance official to give anything of value to another person, with intent to influence such official's decision in carrying out any of his duties or laws or regulations.

(4) Except as otherwise allowed by law, a person or entity shall not knowingly pay, offer, deliver, receive, solicit or accept any remuneration, as an inducement for referring or for refraining from referring a patient, client, customer or service in connection with an insurance plan.

(5) A person or entity shall not, in any matter related to any insurance plan, knowingly and willfully falsify, conceal or omit by any trick, scheme, artifice or device a material fact, make any false, fictitious or fraudulent statement or representation or make or use any false writing or document, knowing or having reason to know that the writing or document contains any false or fraudulent statement or entry in connection with the provision of insurance programs.

(6) A person or entity shall not fraudulently deny the payment of an insurance claim.

Plaintiffs argue that they are among the class of persons this statute protects because they have a homeowners' insurance policy and were harmed by defendants' allegedly "false, fictitious or fraudulent" statements in defendants' damage assessment report, which violates subsection (5) of the statute, thereby establishing negligence per se.

This argument fails because it is based on a misinterpretation of the statute's purpose. Section 7-5-303 is one of several sections of a legislative enactment that created an "Insurance Integrity Enforcement Bureau" within the state attorney general's office. *See* § 7-5-301. This bureau's mandate is to investigate and prosecute insurance fraud, including workers' compensation fraud. *See* § 7-5-305. The statute authorizes the Mississippi Attorney General to prosecute violations, and it requires the bureau to report its activities to the legislature annually. *See* § 7-5-307. The statute provides for criminal penalties for violations of the above-quoted section. *See* § 7-5-309.

Section 7-5-303, entitled "definitions and prohibited conduct," prohibits a person or entity from . . . (2)(a) executing, or attempting to execute, a scheme to defraud an insurance plan; (2)(b) executing, or attempting to execute, a scheme to obtain insurance money by false presences; (3) bribing insurance officials; (4) paying or receiving remuneration for referring, or refraining from referring, patients or services in connection with an insurance plan; (5) "in any matter related to an insurance plan, knowingly and willfully falsify, conceal or omit by any trick, scheme, artifice or device a material fact, make any false, fictitious or fraudulent statement or representation or make or use any false writing or document, knowing or having reason to know that the writing or document contains any false or fraudulent statement or entry in connection with the provision of insurance programs"; and (6) fraudulently denying an insurance claim.

The purpose of this statute, apparent from the plain meaning of the text, is to combat fraud in the *health insurance* field. The statute is concerned with protecting insurance plans which provide "health benefits" and the insureds of policies providing such benefits. Life, property and casualty policies are mentioned in the definition of "insurance plan," but these are included within the statutory definition only insofar as they provide health benefits. If the legislature had intended for this statute to encompass all forms of insurance, it would have expressed that intent by defining an "insurance plan" as any plan or policy of insurance without the qualifying and limiting verbiage. Plaintiffs' effort to bring their homeowners' policy within the statutory definition of "insurance plan" fails because a homeowners' policy provides no health benefits. For this reason alone, the court rejects plaintiffs' argument that they belong to the class this statute was designed to protect.

The court likewise rejects plaintiffs' contention that their injury was of the type the statute was designed to prevent. The specific subsection of the "prohibited conduct" section upon which plaintiffs focus is § 7-5-303(5). As noted above, this subsection prohibits certain wrongful acts "in any matter related to any insurance plan." No such acts could have occurred in this case, as the homeowners' policy does not provide health benefits and it therefore is not an "insurance plan." Plaintiffs' statement that this statute "clearly intends to protect policyholders from benefit related damages resulting from misconduct of any entity involved in adjusting claims under an insurance plan – not just the insurance company that issued the plan," Plaintiffs' Motion for Summary Judgment, p. 3, cannot be reconciled with the statutory definition limiting an insurance plan to one that provides health benefits and reads far more into the statute than the words themselves permit. To the extent plaintiffs contend defendants' actions fall within the "false document or writing" clause, this effort also fails because the clause applies only "in connection

with the provision of insurance programs," which is not at issue in the present case.

In short, the statute upon which plaintiffs rely does not create a negligence duty because plaintiffs are not "in the class of persons the statute was designed to protect," nor was plaintiffs' injury of "the kind . . . the statute was designed to prevent." *Davis, supra*, 887 So.2d at 194.

Plaintiffs also suggest that a duty sufficient to support their negligence claims has been recognized by case law, which plaintiffs contend support the proposition that "liability for negligence extends to third parties when those third parties are damaged by the negligent performance of a contracting engineer." Plaintiffs' Response, p. 2. Plaintiffs cite two unpublished cases for this proposition: *Ray v. Rimkus Consulting Group, Inc.*, 2006 WL 2594398 (S.D. Miss. Sept. 11, 2006); and *Everman's Elec. Co., Inc. v. Evan Johnson & Sons Constr., Inc.*, 2007 WL 1334396 (Miss. Ct. App. 2007). Neither case supports the stated proposition.

While *Ray* is factually similar to the present case, the precise issue of duty was not discussed. After their house was destroyed by Hurricane Katrina, plaintiffs sued, among others, the engineers who assessed the damage and prepared a report at the request of the insurer. The claims were for fraud, breach of contract, and bad faith, *but not negligence*. *See id.* at *1. In denying the out-of-state engineers' motion to dismiss for lack of personal jurisdiction, the court stated:

> In the realm of the insurance world, the connection between this contract, this loss and claim for benefits, the company's investigation, the submission of a report as part of the investigation, and the ultimate decision made by the company utilizing that report bring reasonably foreseeable consequences in this state, not of the far flung economic nature but of injury and damage associated with insurance policies and independent torts (or even gross negligence, malice, or reckless disregard) which may arise from them. Those performing work for [the engineering firm] knew or should have know this

11

resulting impact was likely.

*Id.* at *6. Plaintiffs cite these two sentences as establishing a duty of care owed to them by the Sibley defendants. Yet the quoted passage says nothing about any such duty. The issue in *Ray* was whether the court could permissibly exercise personal jurisdiction over the non-resident defendants who allegedly had altered and forged the damage report, and destroyed an earlier version of the report which was favorable to plaintiffs, in collusion with the insurer and the adjuster. On those allegations, the court held that its exercise of personal jurisdiction did not violate defendants' fourteenth amendment due process rights. The court did not, and it had no occasion to, indicate whether defendants may have owed plaintiffs a duty under negligence law.[1]

*Everman's Elec. Co.* is even less instructive on this point than is *Ray*. Plaintiffs do not direct the court to a specific passage or page, and the court has found none which are directly relevant. *Everman's Elec. Co.* involved a dispute between an electrical subcontractor, on the one hand, and the construction manager and the general works contractor, on the other. The court's assessment of the parties' obligations depended heavily on the parties' contracts. The court sees nothing in this case to support the specific proposition urged by plaintiffs, namely, that the Sibley defendants owed them a duty cognizable in negligence law.

In sum, the court shall grant summary judgment for defendants on the negligence

---

[1]The court in *Ray* did comment that the harmful consequences of the defendant engineers' actions were reasonably foreseeable. Assuming the same can be said in the present case, this by itself does not establish the existence of a duty under negligence law because foreseeability is only one of several considerations relevant to duty. *See Prosser and Keeton on Torts, supra*, § 54, p. 359. Mississippi courts have referred to foreseeability as "an important component," *Pritchard v. Von Houton*, 2007 WL 333190, at *9 (Miss. Ct. of App. Feb. 6, 2007), and "the important component," *Lyle v. Mladinich*, 584 So.2d 397, 399 (Miss. 1991), but not the *only* component in determining the existence of a negligence duty.

claims because plaintiffs have failed to meet their burden of proving that under Mississippi law there is a duty, whether created by statute or recognized by case law, obligating engineers such as the Sibley defendants to exercise due care towards the insureds under a homeowners' insurance policy when preparing a damage report at the request of the insurer.  The statute relied upon by plaintiffs, Miss. Code Ann. § 7-5-303, creates no such duty, and the cases they cite, *Ray v. Rimkus Consulting Group, Inc.*, and *Everman's Elec. Co., Inc. v. Evan Johnson & Sons Constr., Inc.*, do not recognize one.  In the absence of a duty, the negligence claims fail as a matter of law.

Plaintiffs' only remaining claim is for "interference with contractual rights."  The claim has been abandoned, as plaintiffs have not responded to the request within defendants' motion seeking summary judgment on this claim.  In their own summary judgment motion, as well as their response to defendants' summary judgment motion, plaintiffs focus all of their attention on the negligence and conspiracy claims and say nothing regarding the interference with contract claim.  Plaintiffs having voiced no objection, the court shall grant summary judgment for defendants on this claim.

For the reasons stated above,

IT IS ORDERED that plaintiffs' motion for summary judgment [docket entry 183] is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment [docket entry 180] is granted.

IT IS FURTHER ORDERED that all other pending motions are denied as moot.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
Dated: June 4, 2007          CHIEF UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 4, 2007, by electronic and/or ordinary mail.

s/Carol Mullins
Case Manager